Good morning, Judge Fischer. I wanted to primarily address the court's order that I received last week on whether or not in January of 2006 when Mr. Gomez was removed to the United States, he would have been eligible for voluntary departure because of an aggravated felony or not. Looking back at the law in 2006, I think that this issue is not dispositive of this case. At best, I think that the law was in flux at that point in time. There were two cases, and I brought copies with me and gave them to Mr. Ekstrom, that discussed this issue. There was a Barron-Medina case out of this court, which defined sexual abuse of a minor as an offense involving sexual conduct with a minor that constitutes abuse. And that remains today one of the two definitions that this court uses. But the exact meanings of all those three terms… Which case was that? Barron-Medina, which is 187 F. 3rd. 1144. And that was decided in 1999. The court still uses that definition today, but the terms have been better fleshed out. The other case was a BIA decision, Rodriguez-Rodriguez, which the issue in Rodriguez-Rodriguez was whether or not indecent exposure was covered under sexual abuse of a minor as opposed to a contact offense. The court was not asked to focus on age or age disparity issues. It was a very broad decision. It said that you could look at 18 United States Code Section 3509 as indicating forms of sexual abuse. It also looked at a black law dictionary definition as requiring physical or mental maltreatment, which would be similar to Barron-Medina, which says that there needs to be abuse apart from a minor and sex. It also looked at the specific statute in question, which had affirmative defenses for someone that was within three years of the perpetrator and it did not involve duress. So it was a very case-specific case. And I think as evidence of the fact that the law was in flux is a few things. One, we know that this issue was being litigated heavily from 2004 to 2008, what constitutes sexual abuse of a minor in terms of statutory rape-type offenses. But we also know in this case that it wasn't well settled because the notice to appear in this case did not allege an aggravated felony. And that separates this case very distinctly from Lopez Velazquez and from Vidal Mendoza. This is not a case where we can blame an I.J. for not being clairvoyant in advising someone about a form of relief. Initially, the notice to appear alleged a crime of moral turpitude. The crime we're talking about, the Arizona offense, not an aggravated felony. And then later on, the second notice to appear didn't even say that it was a crime of moral turpitude. In recognition, I think, of the facts that the law was not clear at the time, the BIA or the Immigration Authority at the time did not classify this as an aggravated felony. And they had every motive to do so because if Mr. Gomez had been thought to have an aggravated felony, he could have been removed administratively without his stipulation. But I think that all of that aside, the issue in this case can be resolved without deciding whether or not it was well established that this was an aggravated felony at the time. Because there's a two-step process in the collateral attack. The first is, is there a due process violation at the time of the hearing? And we've alleged several. And perhaps the most noteworthy is the judge, the IJ, violating its own regulations in determining that Mr. Gomez voluntarily and knowingly waived his rights to a hearing. We have him asking for a hearing and signing a document saying, I want a hearing on the same day as he signs a stipulation. Excepting that there was a due process violation, coming back to the opening question then, if we disagreed with you about the law being in flux at the time, would there be prejudice? Yes, Your Honor, because it's a two-step process. And the prejudice prong, Lopez Velazquez did not say you judge prejudice as of the time of the hearing. And, in fact, the United States Supreme Court in Mendoza-Lopez that first discussed the fact that a prior removal proceeding must be subject to some sort of review, talked about the fact that if an alien is deprived of judicial review at the time of his hearing because of errors that took place, then the 1326 proceeding would be subject to some sort of review. So the 1326 proceeding is the time for the judicial review. And the court didn't say that this is hampered judicial review, that this is AEDPA type of judicial review. The court says this is your first chance for judicial review. And if you're looking at it, once you agree that there's an error, and maybe the error is not that he was not advised of voluntary departure, maybe the only error was that there was not an adequate finding that his stipulation was voluntary. But once you have that due process error and a lack of judicial review, you get your first chance at judicial review. That means direct review, and that means that you look at it based on the law today. And so if you look at it based on the law today. That's not my understanding. You have to look at, you have to look at, the prejudice is whether or not he, there was a reasonable probability that he might have prevailed. But you look at it today. But you look at the law at that time. Well, that's not what Lopez Velazquez says, as I read it. It says two separate things. You look at whether or not the IJ was erroneous based on what the IJ knew. But when you look at the error, and especially it's true in this case, if he'd been notified of the right to appeal and he appealed. Your point is that we need to apply the laws that exist today back as to what might have happened back. Had the law existed as it is today back at the time he appeared in front of the IJ, whether he was prejudiced. The prejudice analysis, this is his first chance of judicial review, and that applies the law as if it were on direct review. As if he'd been allowed to appeal, and quite frankly, within months, within just a few months of his order of removal, this court said that a sex offense involving a 17-year-old or a 16-year-old does not qualify. So even if he'd been given that right of appeal at the time, there is a plausible case that he would have been able to get relief. What about the sentencing issue? The sentencing issue, of course, you don't go back in time. Right. The sentencing issue, we judge it as of today. And I think that this court repeatedly, and even in the Vidal-Mendoza case, says we are extrapolating from the aggravated felony definition onto the sentencing guidelines. There's two different definitions. One is for older juvenile statutory rape. The other is the sexual abuse of a minor, the Barron-Medina definition that I discussed. And under those two, in the categorical approach, you have to look at the facts that were established at the time of the guilty plea. And in this particular case, and this is the weird thing about going back in time. When you go back in time, I guess you don't get to use a guillemontes de oca. But when you go forward in time, you do. That's also a complicating factor of your prejudice, going back and forth in time. But now we use a guillemontes de oca, maybe, although the Supreme Court is reviewing that. But even using a guillemontes de oca, you get past the fact that the statute only covers people under 18. The age difference was not established at the time of the guilty plea. One thing about this sentencing issue that I think complicates it just a bit, and I'd like you to address this. The district court judge said, well, at the end he gave him, he cut the sentence way down. Was it 22 months? Sure. I think he got less than that. He's in Mexico now. He's been deported. He's gone. He's still under jurisdiction of the court. But, yes, although this court has- So is it necessary to resentence him? Well- Assuming you were to prevail. He wouldn't be available. But if he were to come back, I think it's important for a number of reasons. Tell me why. Well, if he were to come back, and we hope he doesn't, we hope he obeys the law, it would impact whatever sentence was given for a supervised release violation. But this is also if he comes back a recurring issue. You know, how are we going to classify his offense when it reoccurs? And I certainly don't want anyone to think that this was established at the time of this appellate review that he had a crime of violence or even an aggravated felony. And so we would want a final determination of that. For purposes of any potential violation of supervised release, it's significant? I think it's significant for any potential violation of supervised release. I suppose it could even be significant, should he wish to reenter the United States, on whether or not he's classified as an aggravated felon. Do you think it's at all necessary for us to hold a case pending the Supreme Court's decision in this case? I think if the court thinks that this is not covered by the modified approach based on the age difference, I think especially as to the first issue, as to the issue of whether or not the conviction is valid, the court should hold the case versus decamp. As to the sentencing issue, I'm not sure if that's vital. Okay. Do you want to save a minute? I'll save a minute. Thank you, Your Honor. Okay. Thank you. And for the government, we have Mr. Ekstrom. Thank you, Your Honor. Your Honor, good morning. Alexander Ekstrom, Assistant United States Attorney on behalf of the Appellee United States of America. Your Honor, the government believes that the court need not address the Ramos issue as to the first assignment. In this case, Vidal-Mendoza, in indicating that the IJ, in that matter, did not have the obligation to anticipate future changes in the law. In addition to the cases cited by counsel, cited to the case of Lopez-Solis, a 2006 case, 447F3-1201, indicating that, and this is, again, within the same timeframe as the removal in this case, that, quote, sexual contact with a minor under 16 qualifies as sexual abuse of a minor. When was that? That was in 2006, Your Honor. So his stipulated removal was in January of 2006? Yes, Your Honor. First NTA on the 17th of January, second on the 19th. And the government believes that that case is important because it, in that case, the court said this is the way that we've dealt with that offense. This is the definition that we've used. In this instance, the Arizona statute under which he was convicted specifically alleged an individual under the age of 15. So it falls within the Lopez-Solis. He was not eligible for voluntary departure. Therefore, one doesn't have the second prejudice prong of Mendoza-Lopez, and the court need not address the Ramos issue. As to the issue of sentencing, the government believes that that is controlled by two cases cited in our brief, those being Gomez-Mendez and Rodriguez-Guzman, both 2007 cases. The first, Gomez-Mendez, 468F3, 599, defines the term statutory rape as listed in the sentencing guideline for that particular application note as unlawful sexual intercourse with a person under the age of 16. Again, comparing the Arizona statute, both as it's written and as the offense was alleged in the charging document, it falls within that definition for the purposes of the term statutory rape as defined in the guidelines. Rodriguez-Guzman, the same year at 506F3, 738, specifically at 745. If I recall, the indictment didn't allege any age of the victim, right? The indictment in Arizona indicated an individual under the age of 15. It did not allege a specific age. It did not allege a specific age. An upper bound, Your Honor. Right. Yes. So how do we know? We know that the individual is less than 15, and we know that Gomez-Mendez defines the term for the purposes of the sentencing enhancement as an individual under the age of 16. How about the age difference? Your Honor, the government's position is that one doesn't have to get to that. However, taking Your Honor's question, under Estrada-Espinoza, the statute would deal with the first three of the four Estrada-Espinoza factors. The government's position is that excerpt of record 192, which is the judgment of conviction, indicates the defendant's age, albeit excised in the record. But the parties have been clear that that does show his age to have more than a four-year difference. Did he have to admit to that at the time of the plea? The record as it exists does not include an admission of his age. The government's position is that to be tried as an adult, there would have to be a determination of age, and that his age was, in fact, I believe 23 at the time. However, as I indicated earlier, not only is Gomez-Mendez important, but Rodriguez-Guzman, also 2007, is important because at 506F3rd, specifically at page 742, the court makes a distinction between the determination of these terms for the purposes of 8 United States Code section 1101A43A, and for its uses for the sentencing guideline purposes. While some terms do cross, in this instance, the term statutory rape is a specifically listed offense under the sentencing guideline, it's read in in a different fashion in 21101, but it's its own term separately defined, and in the words of Rodriguez-Guzman, appropriately so. Finally, with respect to the- Counsel? Yes. You mentioned on the date, coming back to Judge Paez's question, you said that in order for him to be tried as an adult, they had to determine his age? Your Honor, and perhaps I misspoke. There was no evidence of a decline proceeding which would be required for an individual who would be under the age of 18, and so in this instance, he was tried in the Superior Court of Arizona, not in the juvenile division. So there is nothing in the record, but the government's arguing that there would have had to have been some sort of determination that he was an adult and not a juvenile. Well, assuming, and maybe you are disputing this, that there has to be a four-age gap for statutory rape, are you suggesting that because there is on the judgment form a handwritten reference to his date of birth, that that is a judicially noticeable fact, even if it was irrelevant to the elements of his crime? The point of that is he didn't plead to it. He didn't affirm his age. Yes, Your Honor. First of all, we believe that one doesn't get to Estrada Espinoza. Second of all, if one does, we believe it is a noticeable document under Riena Rodriguez, 655 F. 3rd, 1182. And I understand the court's question regarding it being necessary, and as I've indicated, because he was tried as an adult, the government believes that it is necessary, and that was the analysis of the district court. Again, the government believes that we never get to Estrada Espinoza because it's defining a term for the purposes of United States Code Section 1101, a broader term than the specific term statutory rape as defined in the previously mentioned cases. Did I answer the court's question? Yes. Thank you. And, Your Honor, let me take you back to the first issue, which is the due process violation. Yes, Your Honor. The removal proceeding. Do you think there was a due process violation under Ramos? No, Your Honor. Why not? I believe that Ramos is distinguishable on its facts because, as the court indicated in that case at 623 F. 3rd at 683, quote, Ramos did not receive a competent explanation of his rights in a language he could understand. It's the government's belief. That wasn't all that they said in Ramos. They said a lot, Your Honor. However. They had much to say. We just can't, you know, dismiss it. And I certainly, such is not my intent. However, I would say that each of the detailed explanations in Ramos spring from an initial failure in the interpretation, a glaring failure that drove the court's concerns in the many areas of discussion. How does one actually determine that somebody has, I guess, knowing involuntarily waived their rights without actually facing the individual? One does it in this instance based on the stipulated form which the individual signs and is reviewed. The form? It's a preprinted form. It is, Your Honor. I can't quite figure that out, to be honest with you. And, Your Honor, let us just say that I was pleased to get the request for additional submission so that I could argue a lack of prejudice. However, the government would submit that in this instance there is a statute that provides for a CFR. The CFR lists the criteria. I understand. I mean, your whole argument is that there was no prejudice here. Yes. Even assuming there was a due process violation. Assuming there was a due process violation, there was no prejudice because the state of the law, as indicated in the same year by this court, included the offense of prior conviction as an aggravated felony, thus no voluntary departure. Okay, thank you. Okay. Ms. Bunnell, we've got an extra minute for you. Thank you. Going to the due process violation and prejudice, the case that Mr. Eckstrom cited, the 2006 case, this case, again, was distinguishable because that statute dealt with a minor under 16. Our statute deals with a minor under 18. We are in pre-Guillamante to OCA land where we're looking just at the statute, although Navarro-Lopez hadn't been decided yet. The predecessors to Navarro-Lopez won. Again, we're out there. Again, this is why it makes it much easier to look at the prejudice prong as the direct review that my client never got. Maybe he would have established the Navarro-Lopez standard had he not been deprived of his right to judicial review. In terms of the issue of what was established via judicially noticeable facts, you need to look at what was established at the time of the decision of guilt. At the time of the decision of guilt, there was nothing about the date of birth that was established. The judgment that came out was after a PSR, much later. In addition, even if one assumes that he was established to be 18 at the time of his guilty plea, he could have been 18 and still less than four years older. So those are the only points I wanted to make. Thank you. Thank you both for excellent arguments. The case shall be submitted, and we appreciate your travel from Yakima.
judges: Fisher, Gould, Paez